**20**

Ki YOUNG CHUNG, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, Defendant.

Civil Action No. 96–01292 CKK.

United States District Court,
District of Columbia.

July 9, 1997.

Douglas Edward Mataconis, Im & Associates, Annandale, VA, for plaintiffs.

Lisa Annette Bell, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC for defendant.

### MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

In this action, plaintiffs have brought suit against the District of Columbia for alleged violations of the Fifth Amendment to the United States Constitution. Presently pending is defendant's Motion To Dismiss, or in the Alternative, for Summary Judgment; plaintiff's opposition thereto; and defendant's reply. For the reasons set forth below, the Court grants defendant's motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6).

### I. BACKGROUND

The twenty-two plaintiffs in this action each possess valid vending licenses from the District of Columbia. Once licensed, a ven-

dor may conduct certain commercial transactions on designated city streets and sidewalks pursuant to municipal regulations. *See* D.C.Code Ann. § 47–2834 (1997). Although the vending license is a broad permit to operate in any acceptable location, the plaintiffs, for the past ten years, have established their own economic niche on Tenth Street, N.W., between "F" and "G" Streets in front of the present site of the Hard Rock Cafe.

On June 11, 1993, the District of Columbia published a notice in the D.C. Register, which indicated that the Director of the Department of Public Works intended to take final rulemaking action that would transform this stretch of Tenth Street into a loading zone. *See* Department of Public Works, Notice of Emergency and Proposed Rulemaking, 40 D.C.Reg. 3775–76 (1993).[1] Despite the opportunity to comment, no member of the public—much less one of the plaintiff-vendors—filed written objections to the proposal. See Department of Public Works, Notice of Final Rulemaking, 40 D.C.Reg. 6635 (1993) (noting that "[n]o comments have been received"). On August 4, 1993, having received no opposition to its proposed rule, the Department of Public Works adopted the Tenth Street–Loading Zone amendment. *See id.* at 6635.

The adoption of this amendment foreclosed the plaintiffs from using this busy thoroughfare to vend their wares. While the plaintiffs remained free to pursue their livelihood on other Washington streets, the District prohibited plaintiffs from continuing to sell from their traditional location because municipal regulations provide that "[n]o vendor shall vend nor shall there be any vending operation on or within marked loading and entrance zones." D.C. Mun. Regs. tit. 24 § 510.21 (1995).[2] According to the plaintiffs,

by creating a loading zone in front of the Hard Rock Cafe on Tenth Street, the District has inflicted unusual hardship and irreparable injury by denying them the ability to operate their businesses.

Plaintiffs brought this action on June 6, 1996 seeking declaratory relief. Predicating their claims on the Fifth Amendment to the United States Constitution, the plaintiffs assert that they have a constitutionally protected property interest in vending at the Tenth Street location, and that the District's adoption of the Tenth Street amendment failed to provide them with notice and an opportunity to be heard consistent with the Due Process Clause.

## DISCUSSION

### II. STANDARD OF REVIEW

This Court will not grant a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). At this stage in the litigation, "[t]he complaint must be liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979). Accordingly, the Court assumes that all factual allegations forwarded by the complaint are true for purposes of adjudicating a motion to dismiss. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985).

### III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' suit must be dismissed for two reasons. First, while the Court recognizes

---

1. Specifically, the proposed rule would have amended 18 D.C.M.R. § 4019 by adding the following:

   *10th Street, N.W.*
   From a point approximately 266 feet south of F Street to a point approximately 370 feet south of F Street, on the east side, "No Parking, Loading Zone."
   40 D.C.Reg. 3775, 3776 (1993).

2. D.C.Code Ann. § 47–2834(b) further provides, in pertinent part:
   The Mayor of the District of Columbia shall enforce regulations governing vendors licensed under this section ... including locating the places on the public streets and public spaces where licensed vendors may stand and changing the locations where vendors may stand as often as the public interest requires.
   *Id.*

that possession of a vending license spawns limited property rights for which the Fifth Amendment offers protection, vendors do not have a constitutional property right to exercise their vending permits *in a particular location.* Second, even assuming that plaintiffs had a property interest in the Tenth Street location, the District provided all notice and process that was constitutionally due to the plaintiffs.

A. *The District of Columbia's Licensing Regulations Do Not Confer upon Plaintiffs a Legitimate Constitutional Claim of Entitlement To Vend on Tenth Street.*

The right to procedural due process does not exist in a vacuum. Rather, the Constitution endows individuals with protection against only the "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972).[3] Thus, to determine whether plaintiffs were unconstitutionally deprived of due process first requires this Court to ascertain whether the interest that the plaintiffs lost was even a cognizable property right to which the Fifth Amendment extends.

■ The contours of putative property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law...." *Id.* at 577, 92 S.Ct. at 2708. Thus, plaintiffs must predicate their claim to a constitutional property interest not on the metaphysics of the Fifth Amendment but on the concrete provisions of the D.C.Code. In order to possess a constitutional property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

■ Plaintiffs claim essentially that they possess a constitutional property interest in

their decade-old vending locations on Tenth Street. The District's regulations that govern the licensing of vending, however, do not support such a broad claim. In the District of Columbia, all vendors must obtain a license from the District in order to practice their trade. *See* D.C.Code Ann. § 47–2834(a) (1997). A vending license, however, is merely a general-purpose permit to vend in District-approved locations; it does not in any way assign locations to individual vendors. Moreover, section 47–2834(b) explicitly qualifies the scope of the license by reserving to the Mayor the authority to "change[ ] the locations where vendors may stand as often as the public interest requires." *Id.* § 47–2834(b).

Significantly, this is not a case in which the District of Columbia has revoked or even suspended the plaintiffs' licenses. To that extent, the plaintiffs' reliance on *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), is inapposite. The *Bell* decision and its progeny turned on a very different situation from the case at bar. In the passage that plaintiffs cite, the Supreme Court clearly is concerned with the "suspension" of licenses and the concomitant procedural safeguards that are to be accorded when licenses are "taken away." *See Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Here, by contrast, the District merely restricted the opportunity to vend on a 104–foot stretch of Tenth Street. It strains the common meaning of words to equate this relatively minor prohibition on vending to a wholesale revocation or suspension. The plaintiffs' licenses do not constrict their authority to vend to that single, small commercial corridor. Rather, plaintiffs remain free to relocate to any one of the District of Columbia's bustling commercial expanses.

Plaintiffs almost parenthetically suggest that simply by virtue of their decade-long tenure at the Tenth Street locations, they developed a constitutional entitlement to that area. This argument not only lacks support from the case law, but it contradicts the express purpose of section 47–2834(b) of the

---

**3.** Although *Roth* involved a due process challenge to a state entity's action, and thus implicated the Fourteenth Amendment, the guarantee of

due process contained in the Fifth Amendment is coextensive.

D.C.Code. This provision clearly indicates that the District anticipated that it might have to prohibit vending in certain areas due to public safety and traffic concerns. Insofar as property rights do not exist in the abstract but stem from state law, plaintiffs' alleged property interest in the Tenth Street location is without merit because no external source of law confers such an entitlement on District vendors. In fact, during the ten years that the plaintiffs sold their goods to Washington passers-by on Tenth Street, section 47–2834(b) placed all vendors on notice that the Mayor could freely change the permissible locations for vending at any time.[4]

While the plaintiffs' claim presents an issue of first impression for this Circuit, the Court has, through its own research, found the decisions of other courts to be persuasive. In *Lindsay v. City of Philadelphia*, 844 F.Supp. 229 (E.D.Pa.1994), the district court rejected claims that licensed city vendors "had a protected property interest in the locations where they had vended for between two and ten years, and that they should have had individual notice and a hearing before being forced to vacate those locations." *Id.* at 234. In *Lindsay*, the city of Philadelphia's regulations were practically identical to those of the District of Columbia. There, vendors were granted general-use permits, which did not assign particular locations; the city retained the power to prohibit vending in any location; and the restriction at issue merely prohibited vending at one distinct location while leaving the excluded vendors free to pursue alternative locations. *See id.* Just as the district court in *Lindsay* found the evicted vendors to lack a constitutional property interest in vending from their traditional downtown locations, the plaintiffs in the case at bar fail to state a claim under the Due Process Clause because they have failed to allege the loss of a right to which the Fifth Amendment extends. Moreover, at least one other court has reached the same conclusion based on similar facts. *See Fet-*

*fatzes v. City of Philadelphia*, 108 Pa. Cmwlth. 552, 529 A.2d 1220, 1223–24 (1987).

**B.** *Even if the Plaintiffs Possess a Constitutional Right To Vend on Tenth Street, the District Provided Sufficient Notice and an Opportunity To Be Heard.*

■ Were this Court to decide that plaintiffs have a bona fide property right to vend at their Tenth Street locations, their claim still must fail because the District of Columbia provided the requisite notice and opportunity to comment that the Due Process Clause requires. The Due Process Clause is not a talismanic concept that mandates judicial-like proceedings for every property deprivation. On the contrary, "the contours of due process are flexible and vary depending upon the circumstances of a given case." *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C.Cir.1991); *see also Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). The Supreme Court has defined the calculus by which due process is measured by reference to three factors: the private interest affected by the government action; the risk of erroneous deprivation and the value of additional safeguards; and the government's interest, including the fiscal and financial burdens that additional or substitute procedural requirements would entail. *See Connecticut v. Doehr*, 501 U.S. 1, 10, 111 S.Ct. 2105, 2111, 115 L.Ed.2d 1 (1991); *Mathews v. Eldridge*, 424 U.S. 319, 355, 96 S.Ct. 993, 996, 47 L.Ed.2d 18 (1976).

■ On June 11, 1993, the District provided notice through publication in the D.C. Register of the intention to restrict the Tenth Street location to a loading zone. See Department of Public Works, Notice of Emergency and Proposed Rulemaking, 40 D.C.Reg. 3775 (1993). Over the course of a thirty-day period, the public was invited to comment on the proposed rule. *See id.*

**4.** The Court agrees with a Pennsylvania appellate court that addressed the scope of vendors' rights to particular locations: "Although we recognize that Appellants conducted their businesses in the same location for a number of years and most likely developed regular clientele, that is a risk to be assumed by the nature of the vending busi-

ness." *Fetfatzes v. City of Philadelphia*, 108 Pa. Cmwlth. 552, 529 A.2d 1220, 1224 (1987). Moreover, plaintiffs' claim presents an internal tension in that it seeks a constitutional entitlement to the Tenth Street location for an occupation whose defining feature is *mobility.*

None of the twenty-two plaintiffs in this case took advantage of this opportunity to register their written objections to the rule. Finally, the District announced the finality of the proposed rule by publication in the D.C. Register on September 17, 1993. *See* Department of Public Works, Notice of Final Rulemaking, 40 D.C.Reg. 6635 (1993).

The plaintiffs cannot complain that they were excluded entirely from the decision-making process. As indicated, the District of Columbia followed its regulatory procedures by providing notice in the D.C. Register; and interested parties had thirty days in which to state their objections. Moreover, it is extremely unlikely that any procedures more sophisticated than those already offered would diminish the risk of potentially erroneous deprivations. Finally, the fiscal costs to the District and its citizens of providing *individual* notice and *individual hearings* to vendors and countless other tangentially interested parties every time it wished to create a loading zone would be so great as to disable practically the District from modifying traffic regulations. *See Doehr,* 501 U.S. at 10, 111 S.Ct. at 2111; *Mathews,* 424 U.S. at 355, 96 S.Ct. at 936. Accordingly, even if the plaintiffs could establish a constitutional right to vend at the Tenth Street location, their claim must nonetheless be dismissed for failing to state a claim upon which relief can be granted because the District provided plaintiffs with sufficient notice and an opportunity to be heard.

## IV. CONCLUSION

For the foregoing reasons, the Court shall dismiss the complaint against the defendant in the above-captioned case. The Court shall issue an Order consistent with the foregoing Memorandum Opinion.